In the Matter of the Estate of LEONORA S. GRAY, Also Known as LEONORA GRAY, Deceased.

Surrogate's Court, Kings County, October 14, 1936.

*Albert W. Linton,* for the administratrix, M. Lillian Buckley.

*James A. McGough,* for the objectant, Ethel S. Gray Burhans.

WINGATE, S. The issue in this proceeding is simple and concerns the right of the administratrix, who is a daughter of the decedent, to a solution of her claim for payments of money to and for the decedent.

Although her account purports to have allowed and paid this claim, no action on her part could produce this result, since section 212 of the Surrogate's Court Act provides that " an executor or administrator shall not satisfy his own debt or claim out of the property of the deceased until proved to and allowed by the surrogate " (*Matter of Gentry,* 139 Misc. 759, 772), and in its establishment, the fiduciary must, like any other holder of an asserted and contested claim, establish its validity " by clear and satisfactory evidence." (*Matter of Cozine,* 113 App. Div. 22, 23; *Matter of Humfreville,* 6 id. 535, 538; *Matter of Smith,* 75 id. 339, 341.)

Since the transactions from which the asserted obligation arose were personal between the decedent and the claimant, the latter, on the hearing, encountered the difficulties usually inherent in such a situation by reason of the inhibitions of section 347 of the Civil Practice Act, and was forced to rely on certain documents admittedly signed by the deceased which read as follows:

" This is to certify that I moved to 158 Linden Blvd. Apt. 12 on May 1st, 1926. My daughter, Mrs. Lillian Buckley paid my packing and moving bill which was fifty-six dollars ($56).

" Mrs. Buckley agreed to pay me ten dollars ($10) per month toward my rent and never failed one payment.

" The payments were as follows: " Then follows an enumeration of payments of $10 each on the first of each month beginning on May 1, 1926, and ending with August 1, 1934, beneath which is the statement: " This makes a total of One thousand fifty-six dollars ($1056.00).

" (Signed) LENORA S. GRAY."

The second paper is similar and recites:

" This is to certify on Sept. 1, 1934, I moved to 11 Maple Street, Apt. E 10 and my daughter Lillian Buckley paid my moving bill $30. My daughter, Mrs. Ethel Burhans, and Mrs. Buckley did my packing.

" Mrs. Buckley agreed to pay me fifteen dollars ($15.) each month toward my rent which was to be paid in two payments each month, the 1st and 15th.

" The payments are as follows: " Then follows an enumeration of payments of $7.50 each on the first and fifteenth of each month, beginning with September 1, 1934, and ending with August 15, 1935. Beneath this is written:

" This makes a total of two hundred ten dollars ($210).

" (Signed) LEONORA S. GRAY."

" Received from Mrs. Lillian Buckley fifteen dollars ($15.) for Sept. rent, paid on the first and fifteenth, 1935.

" (Signed) LENORA S. GRAY."

It is on these documents alone that the court is importuned to adjudicate the validity of the asserted liability of the estate to the accountant. It will be observed that neither contains any express promise of repayment by the decedent. On the contrary, each recites that the sums were advanced or paid by reason of the fact that the accountant had " agreed to pay me " the specified sums. The usual connotation of " agreed " would imply some contractual undertaking, but what contra consideration therefor, if any, existed in the present instance, is wholly undisclosed.

The argument is advanced that the relationship of mother and daughter existing between the parties is sufficient to negative any implication for repayment, on the analogy of the authorities which determine that the law does not imply a promise to recompense services performed by a person standing in a close relationship to another. (*Moore* v. *Moore*, 3 Abb. Ct. App. Dec. 303, 312; *Matter of Hamilton*, 70 App. Div. 73, 76; affd., 172 N. Y. 652; *Elesser* v. *Mead*, 197 N. Y. Supp. 145, 146, not otherwise reported; *Penfield* v. *Penfield*, 155 App. Div. 177, 179; *Matter of Mason*, 134 Misc. 902, 905; *Matter of Huedner*, 138 id. 101, 103.) The court is, however, familiar with no precedent which has extended this principle to a gift or payment of money. Its basis is the familiar one that ordinary acts of courtesy and kindness are usually not performed with the expectation of recompense or reward (*Matter of Mason*, 134 Misc. 902, 910), which, if an attempt were made to extend it to tangible gifts of cash, would seem somewhat conflicting with the rule that the law will not presume the making of a gift. (*Nay* v. *Curley*, 113 N. Y. 575, 578; *Matter of Williams*, 157 Misc. 458, 460; *Matter of Greenberg*, 158 id. 446, 448.)

Since it is evident from the documents in evidence that the vastly greater proportion of the moneys in question was turned over to the decedent in person, the line of authorities is not applicable that a voluntary payment on behalf of another is not recoverable in the absence of a demonstration of a request or duty in this regard. (*McNamee* v. *Zimmett*, 207 App. Div. 60, 62; affd., 239

N. Y. 602; *National Bank* v. *Board of Supervisors,* 106 id. 488, 494; *Flynn* v. *Hurd,* 118 id. 19, 26; *Matter of Welton,* 141 Misc. 674, 684; *Matter of May,* 160 id. 497.)

The court would hesitate to metamorphose the unquestionable rule against a presumption of gift into an affirmative inference of a promise to pay which would be sufficient to constitute the " clear and satisfactory evidence " required of the claimant. However, it is fortunately unnecessary to predicate the determination in this case on an affirmation of the unsoundness of this course.

The documents themselves twice state that the claimant " agreed to pay " the decedent the specified sums and the enumerated " payments " were in obvious solution of what she had " agreed " to do. Comment has already been made on the natural connotation of the word " agreed " as indicating a contract. The usual signification of the words " pay " and " payments " is also worthy of consideration.

Obviously, the turning over of the enumerated sums by the claimant to the decedent must have been an act possessing one of three possible aspects, namely, *first,* that of a gift, *second,* of the solution of an obligation, or, *finally,* of a loan or advance. As noted, the law will not presume the first, and there is nothing in the record which would warrant such a characterization of the transaction. It must, therefore, have been either the solution of an obligation which would, of course, not justify a repayment, or a loan, which would.

In a choice between these two alternatives, with the documents themselves the only basis upon which a decision may be predicated, their exact language must control. They speak of an agreement to " pay," and " payments " made pursuant to that agreement.

The Standard Dictionary defines the verb " pay " as " to satisfy, as a claim or obligation, by doing or giving that which is required; as, to *pay* a bill." " Payment " is said to signify " the discharge of a debt, obligation, or duty."

Whereas in lay documents of this type, the popular meaning of language should ordinarily be followed, it is reassuring to note that in this instance at least, judicial definition reinforces lay connotation.

In *Beals* v. *Home Insurance Co.* (36 N. Y. 522, 527) the court quotes and follows the meaning attributed to the verb " pay " given by the Supreme Court of Massachusetts in *Tolman* v. *Manufacturers' Insurance Company* (1 Cush. 73) as follows: " To pay, is defined by lexicographers, to discharge a debt, to deliver a creditor the value of a debt, either in money or in goods, to his acceptance, by which the debt is discharged."

This, in turn, is cited and followed in *La Montagne* v. *Bank of New York* (94 App. Div. 219, 234)..

That this natural and usual meaning, which operates most strongly against the claimant, must be employed in the present case is emphasized by the rule that a document must, in case of ambiguity, be construed most strongly against its author (*Gillet* v. *Bank of America*, 160 N. Y. 549, 554; *Moran* v. *Standard Oil Co.*, 211 id. 187, 196; *Atterbury* v. *Bank of Washington Heights*, 241 id. 231, 238; *Evelyn Bldg. Corp.* v. *City of N. Y.*, 257 id. 501, 513), since it appears that the documents, while signed by the decedent, were prepared by and in the handwriting of the claimant.

It follows that the documents can be given no higher evidentiary rating than that of receipts for the solution of an obligation, wherefore, the accountant has failed to sustain the burden of proving the validity of her claim. The objections to its purported allowance are, therefore, sustained and the accountant will be surcharged with the amount asserted to have been paid in its satisfaction.

Enter decree on notice in conformity herewith.